Andrew Reichardt, Utah Bar # 11343
Attorney for Ginger Warnock
5330 South 900 East, Suite 115
Salt Lake City, UT 84117
(801) 261-3400
andrew@utdisability.com

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

GINGER WARNICK,

    Plaintiff,

v.

LIFEMAP ASSURANCE COMPANY,

    Defendant.

Case No. _____

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1.    Plaintiff GINGER WARNICK, hereinafter referred to as "Plaintiff," brings this ERISA action against the LIFEMAP ASSURANCE COMPANY Group Welfare Benefits Plan, in its capacity as Administrator of the NATURE'S SUNSHINE PRODUCTS, INC. (Nature's Sunshine) Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short-term, long-term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of her employment with Nature's Sunshine.

## PARTIES

2. Plaintiff is a citizen and resident of Pleasant Grove, Utah.

3. Defendant is a properly organized business entity doing business in the State of Utah.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the District of Utah. Defendant may be served with process by serving its registered agent, C T Corporation System, 1108 East South Union Avenue, Midvale, UT 84047.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the District of Utah is proper by virtue of Defendant doing business in the District of Utah. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the

3

third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979). See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the District of Utah, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. LM 1152165.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Nature's Sunshine, with coverage beginning on January 1, 2018.

4

10. Said policy became effective January 1, 2018.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. LM 1152165 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## **STANDARD OF REVIEW**

19. In order for the Plan Administrator's decisions to be reviewed by this Court

5

under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

6

25. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii. Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);
xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

**ADMINISTRATIVE APPEAL**

7

29. Plaintiff is a 65-year-old woman previously employed by Nature's Sunshine as a "Cash and Accounting Manager."

30. Cash and Accounting Manager is classified under the Dictionary of Occupational Titles as having a Sedentary exertional level. This occupation also has an SVP of 8 and is highly skilled work.

31. This occupation was very demanding in that it required Plaintiff to perform professional accounting duties; assisted in preparing monthly and annual financial statements including the balance sheet and income statement; reconciled bank cash accounts; helped with sales tax; prepared for and assisted in quarterly and annual audits; assisted in the preparation of annual reports; determined and reported accrued liabilities; prepared and maintained budgets; and performed other related duties as assigned.

32. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on August 29, 2023.

33. Plaintiff alleges that she became disabled on August 30, 2023.

34. Plaintiff filed for short-term disability benefits with Defendant.

35. Short-term disability benefits were granted.

36. The Plan defines "**DISABILITY**" as follows:

"**DISABILITY**" *means you are considered disabled when we review your claim and determine that, due to **your sickness** or **injury**:*

*1.   **you** are unable to perform all the **material and substantial duties** of **your regular occupation**; and*

*2.   **you** have a 20% or more loss in **your monthly earnings**.*

*After 24 months of payments, you are considered disabled when **we** review your claim and determine that, due to **your sickness** or **injury**, **you** are unable to perform the duties of any **gainful occupation** for which **you** are reasonably qualified based on your training, education and experience.*

8

*The loss of a professional or occupational license or certification does not, in itself, constitute disability.*

***You*** *must be under the **appropriate care** of a **doctor** in order to be considered disabled.*

***We*** *may require you to be examined by one or more **doctors**, other medical practitioners, or vocational experts of our choice. **We** will pay for this examination. **We** can require an examination as often as it is reasonable to do so. **We** may also require you to be interviewed by **our** authorized representative. **Your** failure to comply with this request may result in denial or termination of benefits."*

37. The Plan defines **"REGULAR OCCUPATION"** as follows:

**REGULAR OCCUPATION**" *means the occupation you are routinely performing when your disability begins. We will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific Employer or at a specific location."*

38. The Plan defines **"GAINFUL OCCUPATION"** as follows:

"**GAINFUL OCCUPATION**" *means an occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds 80% of your monthly earnings."*

39. Long-term disability benefits were denied.

40. The Plan provides for monthly benefits of $4,588.23.

41. On March 26, 2024, Defendant denied Plaintiff's long-term disability benefits.

42. Defendant's denial allowed Plaintiff 180 days to appeal this decision.

43. Defendant's denial letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

44. Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal.

9

45. On August 28, 2024, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

46. Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

47. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

48. On or about February 9, 2024, Defendant's internal consultant, Mony Foulker, RN, BSN (Ms. Foulker), senior clinical consultant, performed a paper review of Plaintiff's claim file.

49. On or about February 14, 2024, Defendant's internal consultant, Bethany Pyro, CAGS, CRC, vocational consultant, performed a paper review of Plaintiff's claim file.

50. On or about March 22, 2024, Ms. Foulker performed another paper review of Plaintiff's claim file.

51. On or about March 28, 2024, Ms. Foulker performed yet another paper review of Plaintiff's claim file.

52. On or about December 12, 2024, Defendant's paid consultant, Wesley D. Johnson, M.D. (Dr. Johnson), family medicine, performed a peer review of Plaintiff's claim file.

53. Dr. Johnson's peer review of Plaintiff's file is unreliable and unreasonable as a basis for denial because:

10

a. Dr. Johnson's opinion was infected by conflict and bias;

b. Dr. Johnson's conclusions lack foundation and are conclusory;

c. Dr. Johnson failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d. Dr. Johnson lacked appropriate qualifications to comment on Plaintiff's conditions;

e. Dr. Johnson never examined Plaintiff in person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f. Dr. Johnson failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. Dr. Johnson failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. Dr. Johnson based his opinion on summary reports of other underqualified opinions; and

i. Dr. Johnson's conclusions were inconsistent with the weight of the evidence.

54. There is an indication that a "Joyce Berthiaume, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

55. There is an indication that a "Janet Thurston, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

56. Defendant's consultants completed their reports without examining Plaintiff.

57. Defendant notified Plaintiff that Defendant upheld its original decision to

deny Plaintiff's claim for long-term disability benefits.

58. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

59. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

60. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

61. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

62. More information promotes accurate claims assessment.

63. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

64. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

65. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

66. Plaintiff suffers from Hashimoto's disease; thyroid disorder; cervical radiculopathy; and coccydynia.

67. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

68. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

69. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

70. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

71. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

72. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

73. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

74. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

75. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

76. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

77. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

13

78. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

79. Defendant's determination was influenced by its conflict of interest.

80. Defendant's reviewing experts are not impartial.

81. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

82. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

83. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

84. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

85. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

86. Plaintiff incorporates those allegations contained in paragraphs 1 through 85 as though set forth at length herein.

87. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

14

a. Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II: ATTORNEY FEES AND COSTS

88. Plaintiff repeats and realleges the allegations of paragraphs 1 through 87 above.

89. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long-term disability benefits yet unpaid;

15

B.  Order Defendant to pay past due long-term disability benefits retroactive to November 28, 2023 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.  Order Defendant to remand claim for future administrative review and continue to make future long-term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.  Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.  For such other relief as may be deemed just and proper by the Court.

Respectfully Submitted,

ANDREW REICHARDT
ATTORNEY FOR PLAINTIFF

BY:  /s/ Andrew Reichardt
Andrew Reichardt (#11343)
The Law Office of Andrew Reichardt, PLLC
5330 South 900 East, #115
Salt Lake City, UT 84117
Phone: (801) 261-3400
Fax: (801) 261-3535
E-mail: andrew@utdisability.com

DATED: This the 14th day of October, 2025.